UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CHARLES FRANKLIN CHANCE, )
   Plaintiff )
 )
 ) Case No. 1:14-CV-165
v. ) (COLLIER/CARTER)
 )
 )
CAROLYN W. COLVIN, )
Commissioner of Social Security )
   Defendant )

REPORT AND RECOMMENDATION

     This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

     This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Administrative Record (Doc. 12) and Defendant's Motion for Summary Judgment (Doc. 13).

     For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

     Plaintiff was 52 years old at the time of the ALJ's decision (Tr. 6, 24). Plaintiff completed the twelfth grade and had past relevant work experience as a shipping/receiving clerk

and a line feeder (Tr. 24, 31, 165-66).[1]

## Applications for Benefits

Plaintiff filed an application for a period of disability and disability insurance benefits (DIB) and supplemental security income on April 28, 2011 (Tr. 33). He alleges a disability onset date of December 22, 2009 (Tr. 19). His application was denied initially and upon reconsideration. Plaintiff then requested a hearing which was held before an Administrative Law Judge ("ALJ"). On October 12, 2012, following a hearing, an ALJ found that Plaintiff was not under a "disability" because he retained the functional capacity to perform work existing in significant numbers in the national economy (Tr. 14-32). Plaintiff appealed to the Appeals Council. The Appeals Council declined to review the claim (Tr. 1-5). Plaintiff timely filed a complaint with this Court. This case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a

---

[1] All page numbers refer to the number on the paper record. Unfortunately, the electronic page numbers do not properly align with the numbers in the paper record.

listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since December 22, 2009, the alleged onset date (20 CFR 404.1571 *et seq*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: disorder of the low back, osteoarthritis of the left knee, major depressive disorder, generalized anxiety disorder, hypertension, bipolar disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to simple 1-2 type procedures, routine and repetitive work. Further, the claimant would work better with things than with people.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on _____ \_\_, 1966 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(Tr. 17-27).

Issues Presented

1. Whether the ALJ erred by failing to properly consider all of Plaintiff's impairments and failing to provide sufficient reasons for not finding those impairments to be severe.

2. Whether the ALJ erred by failing to include a function-by-function assessment in the RFC assessment as required by SSA Ruling 96-7p.

3. Whether the ALJ erred by failing to properly evaluate and assess the credibility of Plaintiff's testimony as required by SSA Ruling 96-7p.

4. Whether the ALJ erred by failing to properly consider the Global Assessment Function scores assigned to Plaintiff.

Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 19-25) and in Plaintiff's Memorandum. I will not repeat it here but will refer to relevant portions of it in the analysis section.

Analysis

1. Plaintiff's Severe and Non-Severe Impairments:

Plaintiff argues that the ALJ erroneously failed to include pancreatitis, decreased visual acuity, and mood disorder as severe impairments at step two of the sequential evaluation process (Doc. 12-1, Plaintiff's Brief, p. 6). However, as the Commissioner argues, at step two, a Plaintiff has the burden of showing that he has a medically determinable impairment or combination of impairments that is "severe." *See Harley v. Comm'r of Social Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (unpublished); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found that Plaintiff had the following severe impairments: low back disorder, left knee osteoarthritis, high blood

5

pressure, obesity, depression, anxiety, and bipolar disorder (Tr. 19-20). The ALJ thus found in favor of Plaintiff at step two and moved on to the next step in his analysis (Tr. 19-20).

The ALJ acknowledged that Plaintiff had acute pancreatitis in February 2012 and had his gallbladder removed the following month (Tr. 19, 448-49, 456-57, 459-60, 463-64, 488-91, 512-14, 526-28, 530, 533-35). The ALJ found, however, that Plaintiff's acute pancreatitis did not impose more than minimal limitations for a period of 12 months (Tr. 19). The pancreatitis was "mild" and "uncomplicated" and appeared to resolve quickly after gallbladder surgery (Tr. 448-49, 459-60, 463, 537, 542). Within about two months after surgery, Plaintiff reported that he felt "much better physically" and had "got[ten] over his pancreatitis" (Tr. 537). I conclude it was reasonable for the ALJ to find Plaintiff's brief bout of mild pancreatitis was not a severe impairment in this case.

Regarding visual acuity, the examination cited reveals that Plaintiff had 20/25 vision in each eye with glasses (Tr. 368-69). Although the examining doctor diagnosed decreased visual acuity, he assessed no related functional limitations and specifically opined that the impairment was "compensated with glasses" (Tr. 369). Thus, Plaintiff has not established any severe impairment related to his visual acuity. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e) (providing that, in order to prove disability, evidence must establish functional limitations, not just medical diagnoses).

Finally, I agree with the Commissioner that the ALJ did not err by not listing "mood disorder" as a severe mental impairment. The ALJ did list two mood disorders (depression and bipolar) as severe impairments. *See* "Mood Disorders," *MedlinePlus*, U.S. National Library of

6

Case 1:14-cv-00165-CLC-WBC   Document 15   Filed 03/23/15   Page 6 of 15   PageID #: 645

Medicine, http://www.nlm.nih.gov/medlineplus/mooddisorders.html (last updated Oct. 8, 2014) (explaining that depression and bipolar disorder are both mood disorders). The ALJ's Decision lists severe impairments found to include major depressive disorder and generalized anxiety disorder (Tr. 19, Finding 3).

Once an ALJ determines that a claimant has a severe impairment, a failure to find an additional impairment severe is not cause for remand because, under the regulations, an ALJ considers the combined effects of all of the claimant's impairments in evaluating his residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (unpublished) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (unpublished)). In his decision the ALJ carefully considered the entire record and concluded that Plaintiff could perform a range of sedentary work (Tr. 21-25). I conclude Plaintiff has established no error at step two of the sequential evaluation.

    2. <u>The Function-by-Function Assessment:</u>

Plaintiff next argues that the ALJ erred by failing to include a "function-by-function assessment" in his RFC discussion (Doc. 12-1, Plaintiff's Brief, p. 7) (relying on SSR 96-8p). For reasons that follow, I disagree. In his brief, Plaintiff quotes directly from SSR 96-8p and argues based solely on the wording of paragraph 4 of that Ruling. However, as the Commissioner notes, the Sixth Circuit does not interpret SSR 96-8p to require a written function-by-function assessment in the RFC discussion.

As the Sixth Circuit has stated, "[w]hile SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542,

7

547 (6th Cir. 2002) (unpublished) (internal citations and quotation marks omitted). Further, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id.* (internal citations and quotation marks omitted). An ALJ fully complies with SSR 96-8p when he specifies the claimant's exertional and non-exertional abilities and discusses the limitations that were at issue. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) (unpublished) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (unpublished); *Delgado*, 30 F. App'x at 547-48). In fact, as this Court has recognized, "SSR 96-8p clearly states that the ALJ must *consider* each function separately; it does not state that the ALJ must *discuss* each function separately in the narrative of the ALJ's decision." *Beason v. Comm'r of Soc. Sec.*, No. 1:13-CV-192, 2014 WL 4063380, at *13 (E.D. Tenn. Aug. 15, 2014) (emphasis added). Here, the ALJ considered the entire record, specifically discussed Plaintiff's complaints and the medical opinion evidence, and found Plaintiff limited to lifting no more than 10 pounds at a time, lifting or carrying small objects only occasionally, and standing and walking only occasionally (Tr. 21-25).[2] I therefore conclude the ALJ's RFC discussion satisfies the requirements of SSR 96-8p.

    3.  The Credibility Assessment:

Once a claimant establishes a severe impairment, the ALJ must assess the claimant's RFC. An RFC assessment describes the most the claimant can do after considering the effects of all impairments on the ability to perform work-related tasks. *See* 20 C.F.R. §§ 404.1545,

---

2 *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining "sedentary work").

416.945; *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) (unpublished). RFC is meant "to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Stankoski*, 532 F. App'x at 619 (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)).

Here, Plaintiff alleged that he could not work due to back pain, knee pain, depression, and bipolar disorder (Tr. 145). The ALJ examined the evidence and found Plaintiff's subjective complaints not fully credible (Tr. 21-25). *See* 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling (SSR) 96-7p. Credibility determinations rest with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, [the courts] are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012).

Plaintiff contends it is not sufficient for an ALJ to limit his credibility analysis to a "single, conclusory statement" that Plaintiff's complaints were not credible (Doc 12-1, Plaintiff's Brief at 8-9). That may be so but I do not conclude the ALJ did so in this case. The ALJ's decision contains a detailed examination of the objective medical evidence along with an analysis of Plaintiff's reported activities of daily living, his non-compliance with prescribed medication and his alcohol abuse (Tr. 21-25). Regarding Plaintiff's physical complaints, the ALJ considered the objective medical evidence (Tr. 22-25). Although not determinative of credibility, a lack of objective medical evidence supporting a claimant's alleged limitations is one factor an ALJ may consider. *See Kirkland*, 528 F. App'x at 427.

In his Decision, the ALJ specifically considered the following medical findings: In April 2011, Plaintiff went to the emergency room complaining of low back pain, but his back appeared

normal and he showed no tenderness on examination of extremeties (Tr. 22, 304-05, 309). On examination by Thomas Mullady, M.D., in September 2011, Plaintiff showed normal strength in all muscles and normal range of motion in all joints except the left knee (Tr. 23, 368). In fact, Dr. Mullady specifically noted that despite complaining of low back pain, Plaintiff showed normal range of motion in his lumbar spine (Tr. 23, 368-69).

The ALJ considered Plaintiff's daily activities in evaluating his physical complaints (Tr. 24-25). An ALJ may consider daily activities as one factor in evaluating subjective complaints. *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (unpublished). Here, despite testifying that he could not work in part due to knee and back problems, Plaintiff told psychologist Dee Langford, Ed.D., that he could prepare meals, wash dishes, sweep, do laundry, and attend church occasionally (Tr. 25, 374). And he stated in the emergency room in April 2011 that he could perform all activities of daily living without assistance (Tr. 291, 309). In addition, he reported in May 2012 that he was walking a mile for exercise four to five times per week and felt much better physically since he had his gallbladder removed (Tr. 24-25, 49-50, 537).

The ALJ found that Plaintiff's mental complaints were also unsupported by his reported daily activities (Tr. 24-25). At the hearing, Plaintiff testified that his depression and anxiety were getting worse and that he had trouble thinking and concentrating (Tr. 50, 52-53). In a May 2011 function report, however, he reported no problems with his personal care and said that he could shop for groceries, pay bills, and count change though he reports he does not care about his appearance (Tr. 24, 159, 162). He also told Dr. Langford in September 2011 that he could manage his finances with little or no difficulty (Tr. 24-25, 374). Based on this review of the

10

evidence, I conclude there is substantial evidence to support the ALJ's credibility assessment.

      4. <u>The Assessment of the GAF Score:</u>

Plaintiff argues the ALJ failed to properly consider the GAF scores. I disagree. I conclude there is evidence in the record to support the ALJ's decision to reject that score as controlling. The ALJ considered Plaintiff's course of mental health treatment (Tr. 22-24). *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (providing that the agency will consider a claimant's course of treatment when evaluating symptoms). In November 2010, Plaintiff said medication helped to stabilize his mood and keep him from relapsing on alcohol (Tr. 22, 275). He felt "awful" off his medication in September 2011, but felt better back on medication three months later, reporting some anxiety but no panic attacks (Tr. 550, 556). In March and April 2012, Plaintiff reported increased symptoms, including anxiety and low energy (Tr. 542, 546). But by May 2012 he reported some anxiety but said his mood was "rather good" and that he was sleeping well and exercising four to five times per week (Tr. 24, 537). Because Plaintiff's mental health condition could be improved when he complied with treatment, the ALJ reasonably found his disabling complaints less credible. *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (citing *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)).

The ALJ found that Plaintiff stopped working for reasons other than his medical impairments (Tr. 21). In evaluating a claimant's credibility, an ALJ may properly consider that the claimant left work for reasons other than his alleged impairment. *See Maloney v. Apfel*, 2000 WL 420700, at *2 (6th Cir. 2000) (unpublished); *cf. Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) (unpublished) ("Although Workman alleges a disability onset date of June 30, 1998, the record indicates that this is the date that Workman's employer laid him

11

off due to economic reasons."). At the hearing, Plaintiff testified that he last worked in 2009 for a heating and air company and was let go because he was no longer needed (Tr. 21, 47-48).

Plaintiff suggests that the ALJ placed undue weight on his history of alcohol dependence in evaluating the credibility of his complaints (Doc. 12-1, Plaintiff's Brief at 9). Once again, I disagree. Although the ALJ discussed records concerning Plaintiff's history of alcohol dependence, he did not rely on that history in discounting Plaintiff's complaints (Tr. 25). The ALJ's decision makes clear that although Plaintiff's history of alcohol dependence did not enhance his credibility, it also did not appear to cause disabling limitations (Tr. 25). I conclude there was no error in the ALJ's consideration of his history of alcohol dependence.

In evaluating Plaintiff's complaints, the ALJ also considered the medical opinion evidence in the record (Tr. 22-25). An ALJ considers opinion evidence together with the rest of the relevant evidence in determining disability. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b); SSR 96-2p, 96-5p, 96-6p, 06-03p. Ultimately, it is up to the ALJ to determine the weight that each opinion is due. *See Justice v. Comm'r of Soc. Sec. Admin.*, 515 F. App'x 583, 588 (6th Cir. 2013) (unpublished) ("In a battle of the experts, the agency decides who wins.").

The ALJ considered the opinion of examining psychologist Dr. Langford (Tr. 23-24, 371-75). Dr. Langford examined Plaintiff in September 2011 and concluded that he showed moderate impairment in concentration, adaptation, and social interaction; mild impairment in short-term memory; and no impairment in long-term or remote memory (Tr. 24, 374). Dr. Langford also opined that Plaintiff displayed an average intellect and was able to follow written and spoken instructions (Tr. 23-24, 374). The ALJ weighed Dr. Langford's opinion and assigned it great weight (Tr. 23-24).

12

In assigning Dr. Langford's opinion great weight, the ALJ discussed examination notes that supported the psychologist's conclusions (Tr. 23-24, 371-75). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Dr. Langford opined that Plaintiff had no impairment in his long-term memory and only mild impairment in his short-term memory, consistent with examination notes indicating that Plaintiff performed well on several memory tests (Tr. 23-24, 373-74). Dr. Langford also opined that Plaintiff could follow written and oral instructions, consistent with testing that revealed average intellectual functioning (Tr. 23-24, 373-74).

In addition, the ALJ also considered the global assessment of functioning (GAF) score of 45 that Dr. Langford assigned Plaintiff (Tr. 24, 375).[3] In contrast to Dr. Langford's narrative opinion, the ALJ found the GAF score inconsistent with the psychologist's examination findings (Tr. 24). Indeed, while a GAF score of 45 would indicate serious symptoms, Dr. Langford found after examining Plaintiff that he displayed at most mild and moderate impairments in mental functioning (Tr. 374-75). Because Dr. Langford's GAF assessment was inconsistent with the

---

3 The assignment of a GAF score is the last part of a mental health practitioner's statement of a diagnosis, and is intended to rate a patient's current general overall functioning, which is useful in tracking a patient's progress in global terms. Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 41 to 50 represent "serious," scores of 51 to 60 represent "moderate," and scores of 61 to 70 represent "mild." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th Ed. Text Revision 2000) (*DSM-IV-TR*).

13

rest of his examination notes, the ALJ properly assigned that portion of the opinion less weight. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).[4]

Plaintiff argues that the ALJ appeared to improperly "pick and choose" from Dr. Langford's opinion, discounting the GAF score because it was favorable to Plaintiff (Doc. 12-1, Plaintiff's Brief at 10). However, as the Commissioner argues, the ALJ is under no obligation to take an all-or-nothing approach to any medical opinion. *See Justice*, 515 F. App'x at 587 ("The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject. . . . [T]he ALJ had the authority to make these determinations"). Instead, an ALJ need only ensure that his decision provides a clear understanding of why he credited one part of a doctor's opinion while discrediting another. *See Daniel v. Comm'r of Soc. Sec.*, 527 F. App'x 374, 375 (6th Cir. 2013) (unpublished). Here, the ALJ explained that Dr. Langford's GAF assessment was inconsistent with the psychologist's thorough examination notes (Tr. 23-24). I agree with the Commissioner that this is a reasonable explanation for the ALJ's decision to give less weight to Dr. Langford's GAF score and more to his narrative opinion. I conclude there is no error in the ALJ's consideration of the opinion evidence that warrants remand for further consideration or reversal.

After evaluating Plaintiff's credibility and weighing the opinion evidence, the ALJ determined that Plaintiff retained the RFC to perform a range of sedentary work (Tr. 21-25). The ALJ found that Plaintiff could perform simple, routine, repetitive work involving one- or

---

4 Moreover, the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), which was released in May 2013, no longer uses GAF scores to rate an individual's level of functioning. *See Rayford v. Shinseki*, No. 12-0042, 2013 WL 3153981, n.2 (Vet. App. June 20, 2013) (unpublished) (citing *DSM-5* 16). The GAF scale was abandoned due in part to "its conceptual lack of clarity" and "questionable psychometrics in routine practice." *Id.*

14

two-step type procedures (Tr. 21-25, 56). The ALJ also found that Plaintiff would work better with things than with people (Tr. 21-25). I conclude there is substantial evidence to support these findings.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

> (1) The plaintiff's motion for judgment on the administrative record (Doc. 12) be DENIED.
>
> (2) The defendant's motion for summary judgment (Doc. 13) be GRANTED.
>
> (3) The case be DISMISSED.[5]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

Case 1:14-cv-00165-CLC-WBC   Document 15   Filed 03/23/15   Page 15 of 15   PageID #: 654